IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| ACUITY, A MUTUAL INSURANCE CO., § § § | |
| Plaintiff, § § | |
| v. § | Civil Action No. 4:21-cv-0417-O |
| § | |
| JOSE DOMINGUEZ d/b/a R & D TRUCKING and LARRY DUANE HALEY, § § § § § | |
| Defendants. § | |

## MEMORANDUM OPINION & ORDER

Before the Court are Plaintiff's Motion for Summary Judgment (ECF Nos. 21–23), filed August 10, 2021; Defendant Dominguez's Response and Cross-Motion for Summary Judgment (ECF Nos. 25–27), filed August 24, 2021; Defendant Haley's Response and Cross-Motion for Summary Judgment (ECF Nos. 28–30), filed August 24, 2021; Plaintiff's Reply and Response (ECF No. 31), filed August 31, 2021; and Defendant Dominguez's Reply (ECF No. 32), filed September 7, 2021. Having considered the motions, briefing, and applicable law, the Court **DENIES** Plaintiff's Motion for Summary Judgment and **GRANTS in part and DENIES in part** Defendants' Cross-Motions for Summary Judgment.

### I. BACKGROUND

On February 28, 2019, truck driver Larry Duane Haley was making a delivery in Wise County, Texas. *See* Pl.'s App. 57, ECF No. 23-3. He drove the truck to the top of a hill for unloading and set the parking brake. *Id.* Without warning, the truck began to roll down the hill toward other employees and equipment. *Id.* Haley ran after the truck in an attempt to reenter and

1

regain control, but he fell and shattered his right knee. *Id.* The truck stopped when it hit an electrical pole. *Id.*

Jose Dominguez, the truck's owner, had purchased a business auto insurance policy on the truck from Acuity, A Mutual Insurance Co. *See id.* Ex. 1A, ECF No. 23-2. In the policy, Acuity promises to "pay all sums an insured legally must pay as damages because of bodily injury . . . to which this insurance applies, caused by an accident and resulting from the ownership, maintenance or use of a covered auto." *Id.* at 9 (emphasis removed). But Acuity owes "no duty to defend any insured against a suit seeking damages for bodily injury . . . to which this insurance does not apply." *Id.*

Haley sued Dominguez in state court, alleging that Dominguez failed to properly maintain the vehicle.[1] *Id.* Acuity agreed to defend Dominguez in the lawsuit, subject to a reservation of rights. *Id.* at 2, ECF No. 23-1. Acuity then filed suit in this Court on March 9, 2021, seeking a declaratory judgment that it owes no duty to defend or indemnify any party in the underlying lawsuit. Compl. 5–7, ECF No. 1. Haley filed his Answer on April 12 (ECF No. 8), and Dominguez filed his Answer on April 13 (ECF No. 9).

On May 13, the Court ordered the parties to address whether it had jurisdiction over the case. *See* Order, ECF No. 14. After considering the parties' briefing, the Court concluded that the case is justiciable, the Court has jurisdiction, and the factors under *St. Paul Insurance v. Trejo*, 39 F.3d 585 (5th Cir. 1994), weigh in favor of keeping the case in federal court. *See* Order, ECF No. 19. The Court accordingly denied Defendants' requests for dismissal and stay of the case. *Id.*

---

[1] The case is *Larry Duane Haley v. Reyes & Alma Trucking LLC d/b/a R & D Trucking LLC*, No. CV20-11-893 (271st Dist. Ct., Wise County, Tex. Nov. 17, 2020). The facts presented in this Order are taken from Haley's Fourth Amended Complaint in that case, attached as Exhibit 2 to Plaintiff's Appendix (ECF No. 23-3).

Acuity moved to file an amended complaint (ECF No. 20), which this Court granted. *See* Order, ECF 33.

On August 10, Acuity moved for summary judgment. *See* Pl.'s Mot. Summ. J., ECF No. 21. Acuity argues that it has no duty to defend or indemnify Dominguez in the underlying lawsuit because the policy does not cover Haley's allegations. *See* Pl.'s Summ. J. Br. 9, ECF No. 22. According to Acuity, Haley's accident—falling while outside the truck—did not "result[] from the ownership, maintenance or use of a covered auto," so it does not trigger coverage under the policy. *Id.* Acuity thus urges the Court to declare that Acuity has no duty to defend or indemnify any party in the underlying lawsuit. *Id.* at 25.

Dominguez and Haley responded on August 24 and filed their own cross-motions for summary judgment. *See* Def. Dominguez's Cross-Mot. Summ. J., ECF No. 25; Def. Haley's Cross-Mot. Summ. J., ECF No. 28. They argue that Haley's injury—falling while attempting to stop the runaway truck—*does* fall under the policy because it resulted from the "maintenance or use of a covered auto." *See* Def. Dominguez's Resp. 2, ECF No. 26; Def. Haley's Resp. 4, ECF No. 29. The parties exchanged reply briefs, and the motions are now ripe for the Court's consideration. *See* Pl.'s Reply, ECF No. 31; Def. Dominguez's Reply, ECF No. 32.

## II.    LEGAL STANDARDS

### A.    Summary Judgment

Summary judgment is appropriate only where the pleadings and evidence show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is not "a disfavored procedural shortcut," but rather an "integral part of the Federal Rules as a whole, 'which are designed to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317,

327 (1986) (quoting Fed. R. Civ. P. 1). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[T]he substantive law will identify which facts are material." *Id.* The movant must inform the court of the basis for its motion and identify the portions of the record that reveal there are no genuine disputes of material fact. *Celotex*, 477 U.S. at 323.

The court must view the evidence in the light most favorable to the nonmovant. *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 389 (5th Cir. 2013). "Moreover, a court must draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh the evidence." *Id.* And if there appears to be some support for disputed allegations, such that "reasonable minds could differ as to the import of the evidence," the court must deny the motion for summary judgment. *Anderson*, 477 U.S. at 250.

"The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). If a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," the court must grant summary judgment. *Celotex*, 477 U.S. at 322. In that situation, no genuine dispute of material fact can exist, as the failure to establish an essential element of the claim "necessarily renders all other facts immaterial." *Id.* at 323.

### B.   Insurance Policy Interpretation

Under Texas law, courts generally construe insurance policies as they would any other contract. *Don's Bldg. Supply, Inc. v. OneBeacon Ins.*, 267 S.W.3d 20, 23 (Tex. 2008). Terms receive their plain, ordinary meaning, unless the policy itself shows that the parties intended the terms to have a different, technical meaning. *Id.* When terms are defined in an insurance policy,

4

those definitions control. *See id.* at 24. Courts must interpret the policy as a whole, and "[n]o one phrase, sentence, or section of the policy should be isolated from its setting and considered apart from the other provisions." *Id.* (cleaned up). If there is only one reasonable construction of the policy terms, the terms are enforced as written. *Id.* If, however, an insurance policy is ambiguous, courts construe the policy in favor of coverage. *Id.*

### III. ANALYSIS

#### A. Duty to Defend

To determine whether the insurer has a duty to defend the insured in a lawsuit, Texas courts apply the eight-corners rule. *Zurich Am. Ins. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008). That is, a court looks at the four corners of the insurance policy, plus the four corners of the complaint in the underlying lawsuit. *Id.* Considering only those two documents, the court determines whether the allegations in the complaint—regardless of their truth—fall within the scope of the policy. *Id.*

The parties agree that the truck in question is a "covered auto" under the policy. Pl.'s Summ. J. Br. 5, ECF No. 22. The parties also do not dispute that Haley's injury was "caused by an accident." *See* Pl.'s App. 9, ECF No. 23-2. And Acuity admits that Haley "appears to allege a 'bodily injury' as defined in the Policy." *See* Pl.'s Summ. J. Br. 9, ECF No. 22. Acuity disputes, however, that Haley alleges an injury "resulting from the ownership, maintenance or use of a covered auto." *Id.* at 2. Specifically, the parties dispute the meanings of "use" and "maintenance" of the truck.

##### 1. Haley's complaint alleges an injury resulting from the use of the truck.

To determine whether Haley's injury resulted from the use of the truck, the Court must examine the causal connection between the truck and the injury. *Lancer Ins. v. Garcia Holiday Tours*, 345 S.W.3d 50, 54 (Tex. 2011). The policy here employs two different phrases to describe causation. The policy covers bodily injury "*caused by* an accident and *resulting from* the

5

ownership, maintenance or use of a covered auto." Pl.'s App. 9, ECF No. 23-2 (emphasis added) (original emphasis removed). The different phrases carry different meanings. "Caused by" implies more direct causation than "resulting from"—a distinction driven home by the phrases' close proximity. *See Mid-Continent Cas. Co. v. Glob. Enercom Mgmt.*, 323 S.W.3d 151, 156 (Tex. 2010) (observing that the phrase "due to" requires proximate causation, while the phrase "arise out of" requires only but-for causation). For that reason, other courts have properly ruled that the phrase "resulting from" requires only but-for causation. *see also Falls Lake Nat'l Ins. v. Martinez*, No. 7:16-cv-75, 2016 WL 7439425, at *4 (W.D. Va. Dec. 22, 2016).

Texas courts look at three factors to guide the causation analysis, though the factors are not "an absolute test." *Mid-Century Ins. of Tex., a Div. of Farmers Ins. v. Lindsey*, 997 S.W.2d 153, 157 (Tex. 1999).

> For an injury to fall within the "use" coverage of an automobile policy (1) the accident must have arisen out of the inherent nature of the automobile, as such, (2) the accident must have arisen within the natural territorial limits of an automobile, and the actual use must not have terminated, (3) the automobile must not merely contribute to cause the condition which produces the injury, but must itself produce the injury.

*Id.* (quoting 8 Couch on Insurance § 119.37 (3d ed. 1997)).

The facts of *Lindsey* are illustrative. The case involved a child who attempted to climb into a parked truck through the rear sliding window. *Id.* at 154. While climbing in, the child accidentally discharged a loaded shotgun resting in a gun rack above the window. *Id.* The gun injured a bystander in an adjacent vehicle, who sued to recover under the insurance policy. *Id.* Applying the three-part test, the Texas Supreme Court held that the bystander's injuries arose out of the truck's "use" and were thus covered under the policy. *Id.* at 158. As *Lindsey* illustrates, "Texas courts define 'use' broadly." *Lincoln Gen. Ins. v. Aisha's Learning Ctr.*, 468 F.3d 857, 859 (5th Cir. 2006).

6

The Court finds that the first factor weighs in favor of coverage because Haley's accident arose out of the inherent nature of the truck. The parties agree that loading and unloading is a natural use for the truck. The defendants argue that because Haley was engaged in the general activity of unloading the truck, his injury resulted from its use. *See* Def. Dominguez's Resp. 10–11, ECF No. 26; Def. Haley's Resp. 10, ECF No. 29. Acuity responds that Haley never alleges that he was engaged in the unloading himself—Haley merely parked the truck so that others could unload it. *See* Pl.'s Reply 5–6, ECF No. 31. But courts do not require that the injured party be an active participant in the unloading. Rather, "[t]he necessary causal relationship between the use of the truck and the accident is apparent in the fact that the accident occurred in the course of making a commercial delivery in which delivery the use of the truck was an active factor or element." *Am. Emps.' Ins. v. Brock*, 215 S.W.2d 370, 372 (Tex. Civ. App.—Dallas 1948, writ ref'd) (upholding coverage for injuries sustained by a pedestrian who fell into an open sidewalk elevator shaft when employees in charge of the insured truck left the shaft doors open while making a delivery). Indeed, "the vehicle itself need not be in 'operation' or 'in motion' or an 'active participant' in the plaintiff's injuries." *EMCASCO Ins. v. Am. Int'l Specialty Lines Ins.*, 438 F.3d 519, 525 (5th Cir. 2006) (citing *Brock*, 215 S.W.2d at 372). Acuity's concession that the truck was engaged in its natural activity of unloading means that the defendants have carried their burden on the first factor.

The Court finds that the second factor weighs in favor of coverage because Haley's injury occurred within the natural territorial limits of the truck. Haley alleges that he "ran after the runaway truck in an attempt to get back into the truck and stop it from causing excessive damage." Pl.'s App. 57, ECF No. 23-3. Acuity attempts to inject factual issues regarding Haley's proximity to the truck and the time that had passed since he parked it. *See* Pl.'s Summ. J. Br. 15–16, ECF No. 22. But Haley's allegation clearly implies Haley was in the vicinity of the truck and responding

to the hazard it created. Similarly, the injured party in *Lindsey* was in an adjacent vehicle, not the covered vehicle. *See Lindsey*, 997 S.W.2d at 158. Citing *Lindsey*, the Texas Supreme Court also held that workers attached to a pulley system connected to a truck were within the natural territorial limits of the truck. *Mid-Continent Cas.*, 323 S.W.3d at 155. The court did not in either case measure time or distance, nor did it assess the "realistic likelihood" of the events occurring, as Acuity advocates. Pl.'s Summ. J. Br. 15, ECF No. 22. Haley alleges that he was injured while responding directly to the truck's immediate, present hazard. His injury thus occurred "within the natural territorial limits" of the truck. *Lindsey*, 997 S.W.2d at 157; *see also Sentry Ins. v. Just Right Prod., Inc.*, No. 4:14-cv-30, 2015 WL 10819157, at *5 (N.D. Tex. Jan. 7, 2015) (ruling that an injury resulting from an accident caused by a van obscuring the vision of another driver and causing an accident constituted "use" of the van). Because Haley's injury occurred within the natural territorial limits of the truck, the defendants have carried their burden on the second factor.

The Court finds that the third factor weighs in favor of coverage because Haley's injury resulted from his response to the runaway truck. Acuity argues that the truck "*at most* created a condition leading Haley to decide to start running," but the truck did not cause his fall. Pl.'s Summ. J. Br. 23, ECF No. 22. Acuity cites a litany of cases where the injury suffered was too attenuated to sustain coverage under the policy. *See id.* at 16–24. But in none of the cases Acuity cites did the vehicle itself produce the danger.[2] Haley's running was a direct response to the truck rolling down

---

[2] *See Lancer Ins. v. Garcia Holiday Tours*, 345 S.W.3d 50, 52 (Tex. 2011) (transmission of a communicable disease inside a bus did not "result from" the use of the bus); *State & Cty. Mut. Fire Ins. v. Trinity Universal Ins.*, 35 S.W.3d 278, 282 (Tex. App. 2000) (death caused by running into traffic away from an assailant who was in the covered vehicle did not result from the covered vehicle's use); *State Farm Mut. Auto. Ins. v. Lopez*, No. 13-19-00605-CV, 2020 WL 6878734, at *3 (Tex. App.—Corpus Christi Nov. 24, 2020) (collision with cattle that had roamed onto a highway after the cattle had been delivered in a truck did not result from the truck's use); *Essex Ins. v. Long Island Owners Ass'n*, CV B-08-179, 2009 WL 10694217, at *6 (S.D. Tex. June 10, 2009), *aff'd*, 379 Fed. App'x 422 (5th Cir. 2010) (injury caused by swinging traffic bridge arm did not result from the use of a motorcycle); *Kiely v. Tex. Farm Bureau Cas. Ins.*, No. 06-19-00012-CV, 2019 WL 3269326, at *5 (Tex. App.—Texarkana July 22, 2019) (injury sustained while

the hill, and his fall was a natural consequence of the situation's urgency. The underlying lawsuit may later prove that Haley was at fault for the fall. But this Court must examine only whether the truck was *a* but-for cause of the accident, not *the* proximate cause of the accident. *See Utica Nat. Ins.*, 141 S.W.3d at 203. And the Court must take Haley's allegations as true. *See Zurich Am. Ins.*, 268 S.W.3d at 491. Because Haley would not have been injured but for the truck's braking failure, the Court finds that the defendants have carried their burden on the third factor.

As the *Lindsey* test indicates, Haley's injury resulted from his use of the truck. That result is consistent with courts' broad construction of "use" in similar policies. *See Lincoln Gen. Ins.*, 468 F.3d at 859. The defendants have carried their burden on summary judgment to show that Haley's complaint triggers coverage under Acuity's policy.

### 2. Haley's complaint does not allege an injury resulting from the maintenance of the truck.

The defendants also argue that even if Haley's injury did not result from the "use" of the truck, it at least resulted from its "maintenance." Def. Dominguez's Resp. 19–23, ECF No. 26; Def. Haley's Resp. 11–13, ECF No. 29. The argument has intuitive appeal because Haley *does* allege that the truck's brakes failed because Dominguez did not properly maintain the truck. Pl.'s App. 57, ECF No. 23-2. But the case law does not support the defendants' interpretation of "maintenance."

"Maintenance" and "use" are distinct terms that carry different meanings. Maintenance includes, for example, refueling a car, repairing a carburetor, inflating a tire, and changing the oil. *State Farm Mut. Auto. Ins. v. Pan Am. Ins.*, 437 S.W.2d 542, 545 (Tex. 1969). "To determine whether a particular act constitutes 'use' as opposed to 'maintenance,' courts generally look to the *purpose*

---

moving metal roof sheets that had already been unloaded from a truck did not result from the use of the truck).

behind the injury-causing act." *Nationwide Prop. & Cas. Ins. v. McFarland*, 887 S.W.2d 487, 493 (Tex. App.—Dallas 1994, writ denied). In other words, maintenance covers injuries that result from the act of maintaining, not merely a failure to maintain. *See, e.g.*, *Emps. Mut. Ins. v. Bonilla*, 613 F.3d 512 (5th Cir. 2010) (person injured when cleaning the floor of a truck was engaged in maintenance). The "injury-causing act" was Haley falling while running. *McFarland*, 887 S.W.2d at 493. And Haley's purpose in running was to reenter and regain control of the truck. The purpose behind the injury-causing act had nothing to do with the truck's maintenance. *See id.* To the extent Haley's injury resulted from a failure to maintain the truck, it is because it also resulted from his present use of the truck. His claim thus triggers the policy's "use" term, but not its "maintenance" term.

### 3. Dominguez's negligent-entrustment theory is baseless.

Dominguez also argues that Acuity has a duty to defend him from a potential cause of action for negligent entrustment. *See* Def. Dominguez's Resp. 21–23, ECF No. 26. But, as Acuity points out, Haley does not plead negligent entrustment. *See* Pl.'s Reply 14, ECF No. 31. The cause of action is merely, in Dominguez's words, "potential." Def. Dominguez's Reply 11, ECF No. 32. Moreover, even if Haley's complaint alleged negligent entrustment, Dominguez does not explain how that claim would trigger coverage under the policy.

### B. Duty to Indemnify

The parties also move for summary judgment on Acuity's duty to indemnify Dominguez. *See* Pl.'s Summ. J. Br. 24–25, ECF No. 22; Def. Dominguez's Resp. 23, ECF No. 26; Def. Haley's Resp. 13, ECF No. 29. An insurer's duties to defend and indemnify are distinct. *Farmers Tex. Cty. Mut. Ins. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997). "Thus, an insurer may have a duty to defend but, eventually, no duty to indemnify." *Id.* "The duty to defend is thus broader than the duty to indemnify; if an insurer has no duty to defend, it has no duty to indemnify; but an insurer may

have a duty to defend without being ultimately shown to have a duty to indemnify." *Archon Invs., Inc. v. Great Am. Lloyds Ins.*, 174 S.W.3d 334, 339 (Tex. App.—Houston 2005). Because Acuity's duty to indemnify Dominguez depends on the disposition of the underlying lawsuit, the Court denies the parties' summary judgment motions on Acuity's duty to indemnify.

## IV.   CONCLUSION

The defendants have demonstrated they are entitled to summary judgment on Acuity's duty to defend Dominguez in the underlying lawsuit. Accordingly, Defendants' Cross-Motions for Summary Judgment (ECF Nos. 25, 28) are **GRANTED in part** on the issue of Acuity's duty to defend, and Acuity's Motion for Summary Judgment (ECF No. 21) is **DENIED**. Because a factual issue exists as to whether Dominguez is liable in the underlying lawsuit, Defendants' Cross-Motions for Summary Judgment (ECF Nos. 25, 28) are **DENIED in part** on the issue of Acuity's duty to indemnify. Because further proceedings in this case depend on the disposition of the underlying lawsuit, the Court **STAYS** further proceedings in this case and **ORDERS** the parties to update the Court on the progress of the underlying suit. The Clerk of Court is directed to close this matter for statistical purposes.

**SO ORDERED** on this **12th day** of **October, 2021**.

*[Signature: Reed O'Connor]*
Reed O'Connor
UNITED STATES DISTRICT JUDGE